# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BARBARA DeBUSSCHER,

       Plaintiff,                        Case No. 04-72319

v.                                       Hon. Gerald E. Rosen

SAM'S EAST, INC.,

       Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     October 30, 2006

PRESENT:   Honorable Gerald E. Rosen
                United States District Judge

## I. INTRODUCTION

Plaintiff Barbara DeBusscher commenced this suit in state court in June of 2004, asserting a premises liability claim against Defendant Sam's East, Inc. arising out of an August 14, 2002 incident in which she was struck by a falling basketball net/pole unit as she was shopping with her children at a Sam's Club store in Roseville, Michigan. Defendant removed the case to this Court on June 22, 2004, citing diversity of citizenship between the parties. See 28 U.S.C. § 1332(a).

Through the motion now pending before the Court, Defendant seeks summary

judgment in its favor on Plaintiff's state-law negligence claim. In support of this motion, Defendant argues that Plaintiff has failed to produce any evidence of Defendant's actual or constructive notice of any unsafe condition on its premises prior to the incident that resulted in Plaintiff's injuries. In response, Plaintiff contends that she has produced evidence that Defendant created the dangerous condition that led to her injuries, thereby obviating the need for any showing of Defendant's actual or constructive notice of this condition.

Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the written record, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court concludes that Defendant is entitled to summary judgment in its favor.

## II. FACTUAL BACKGROUND

For present purposes, most of the relevant facts are disclosed in Plaintiff's deposition testimony, which the Court views in a light most favorable to Plaintiff as the non-moving party. On August 14, 2002, Plaintiff Barbara DeBusscher was shopping at a Sam's Club store located in Roseville, Michigan and operated by Defendant Sam's East, Inc. She was accompanied on this trip by her three children — her son Nathan and her daughters Miranda and Autumn — who were age seven, four, and three at the time,

respectively. Plaintiff arrived at the store at some point between 12:30 and 2:00 p.m., and was shopping for about half an hour prior to the incident that led to the present suit.

As Plaintiff traveled up and down the store aisles, her two daughters rode in a shopping cart and her son walked immediately beside the cart. At some point, her daughter Autumn asked to get out of the shopping cart. As Plaintiff attended to this matter, lifting her daughter out of the cart and placing her in front of the cart, she heard her son say "there's nothing in it." (Plaintiff's Dep. at 11.) An instant later, a portable basketball net and pole that was on display at the store fell down and struck Plaintiff on the head, leaving her bleeding and pinned underneath the fallen unit.

Shortly after this incident occurred, a merchandise manager at the store, Fred Heck, arrived at the scene. According to his deposition testimony, Heck questioned Plaintiff about the incident and was told that her son "was playing with the basketball post or goal" when it fell and struck her. (Heck Dep. at 20.) Plaintiff testified, however, that her son had merely "touched" the unit. (Plaintiff's Dep. at 19.) Plaintiff further testified that she did not witness her son making any contact with the basketball net, pole, or base prior to the time it fell, and that her son told her only later, after their arrival at home, that he had touched some part of the unit before it fell. (Id. at 19-20.)

Plaintiff did not see anyone in the general vicinity of the basketball unit when it fell, and there are no eyewitness accounts of the incident in the record. Rather, the record on this point consists solely of (i) Plaintiff's testimony regarding her son's statements immediately before she was struck by the basketball unit and after they had returned

3

home following the incident, and (ii) store manager Fred Heck's testimony regarding what Plaintiff allegedly told him upon his arrival at the scene.

According to Fred Heck's deposition testimony, the unit that fell on Plaintiff was a "Lifestyle" portable basketball post and goal, with a large rectangular base on wheels that allows the unit to be moved. According to Heck's understanding, the base is designed to be filled with sand or water to prevent the unit from toppling over. Heck, however, did not set up the particular unit that fell on Plaintiff; rather, this had been done at some point before Heck began working at the store, over two years prior to the August 14, 2002 incident involving Plaintiff.

Heck further testified that a bucket of pool chemicals, weighing roughly fifty pounds, had been placed on the basketball unit's base as an additional measure to prevent the unit from tipping. According to Heck, he had seen this bucket on the base when he walked the sales floor on the morning of the incident, but he discovered the bucket laying on its side when he arrived to investigate Plaintiff's injuries. In addition, while he neither filled up the base himself nor looked inside the base to determine whether it was full or empty at the time the basketball unit toppled onto Plaintiff, Heck testified that "[i]t felt like there was water in" the base when he moved the unit aside after the incident. (Heck Dep. at 14.)[1]

---

[1] Within a short time after the incident, the unit was removed from the sales floor of the Roseville store and taken to the facility's claims department. The Roseville store subsequently was closed, and the merchandise at this store was transferred to other locations. Heck was unable to say where the unit that struck Plaintiff might be located, opining that it might have been shipped elsewhere or possibly even destroyed at some point. (Heck Dep. at 29.)

As a result of this incident, Plaintiff suffered "severe pain" in her head, and was diagnosed as suffering from a "closed-head injury with contusions." (Plaintiff's Dep. at 33, 35.)  This lawsuit followed, with Plaintiff seeking to hold Defendant liable for a dangerous condition on its premises.

### III.  ANALYSIS

**A.    The Standards Governing Defendant's Motion**

Through the present motion, Defendant seeks summary judgment in its favor on Plaintiff's state-law claim of premises liability.  Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In this case, where the record is quite limited, Defendant's entitlement to summary judgment turns largely on the question whether Plaintiff's deposition testimony, if fully credited and construed in a light most favorable to her, provides a basis for a recovery against Defendant under Michigan's law of premises liability.  Accordingly, the Court turns to this issue.

**B.    Plaintiff Has Failed to Produce Evidence that Defendant Caused or Had Notice of an Unsafe Condition that Resulted in Her Injuries.**

Under well-settled Michigan law, a plaintiff must establish four elements in support of a claim of negligence:  (1) that the defendant owed a legal duty to the plaintiff;

(2) that the defendant breached this duty; (3) that the plaintiff suffered damages; and (4) that the defendant's breach was a proximate cause of the damages suffered.  Schultz v. Consumers Power Co., 443 Mich. 445, 506 N.W.2d 175, 177 (1993).  In this case, Plaintiff cites her status as an "invitee" at Defendant's store as giving rise to the requisite duty.  See Stitt v. Holland Abundant Life Fellowship, 462 Mich. 591, 614 N.W.2d 88, 92 (2000).  Thus, the focus here is on the second and fourth elements of Plaintiff's negligence claim — namely, whether Defendant breached a duty owed to Plaintiff as an invitee, and whether any such breach was the proximate cause of Plaintiff's injuries.

   A business owner is not an absolute "insurer of the safety of invitees," but instead owes only a duty "to exercise reasonable care for their protection."  Williams v. Cunningham Drug Stores, Inc., 429 Mich. 495, 418 N.W.2d 381, 383 (1988) (internal quotation marks and footnote with citations omitted).  More specifically, a store owner such as Defendant here is liable for injury resulting from an unsafe condition on the premises only if:  (1) the condition is caused by the active negligence of the store owner or its employees; (2) the condition is known to the owner; or (3) the condition "is of such a character or has existed a sufficient length of time that [the owner] should have had knowledge of it."  Serinto v. Borman Food Stores, 380 Mich. 637, 158 N.W.2d 485, 486 (1968) (internal quotation marks and citation omitted).  In other words, a business owner must have "either created the dangerous condition or had actual or constructive notice of the condition."  Sparks v. Wal-Mart Stores, Inc., 365 F. Supp.2d 664, 668 (E.D. Mich. 2005).

Although Defendant's motion is focused on the matter of its notice — or, more accurately, its claimed lack of notice — of the unsafe condition that resulted in Plaintiff's injury, Plaintiff responds that such an inquiry is unnecessary where, in her view, there is evidence that Defendant actually caused the condition in question. In particular, Plaintiff asserts that Defendant "created a dangerous condition with its display of the basketball unit on the floor of its Roseville store without properly securing it in place, as required by the manufacturer, to prevent it from falling on a customer." (Plaintiff's Response Br. at 10.) As Defendant correctly points out in its reply, however, Plaintiff has failed to produce any evidence that establishes the existence of this dangerous condition, beyond the bare (and legally insufficient) fact that the basketball unit did, in fact, fall on her.

While the parties do not discuss this matter in their briefs, the Court notes at the outset that certain portions of the record cited by the parties cannot properly be considered in resolving Defendant's motion. Specifically, the parties refer in their briefs to the deposition testimony of merchandise manager Fred Heck that, upon arriving at the scene of Plaintiff's injury and questioning her about the incident, he was told that Plaintiff's son had been "playing with the basketball post or goal" when it fell and struck her. (Heck Dep. at 20.) The parties further reference and discuss Plaintiff's contrasting testimony that, although she did not witness it at the time, she was informed by her son upon their arrival at home that he had merely "touched" some part of the basketball unit at some point before it fell on her. (Plaintiff's Dep. at 19-20.) The parties then debate the possible significance of the distinction between Plaintiff's son having "play[ed] with" the

7

unit before it fell and having merely "touched" it.

Yet, the record notably lacks *any* testimony or other evidence from a witness who has firsthand knowledge of the activities of Plaintiff's son just before the basketball unit fell on his mother. While Plaintiff herself might have been in a position to offer such an account, she stated at her deposition that she did not witness her son touching any portion of the basketball unit before it fell on her, and that her knowledge on this subject was gleaned solely from her son's after-the-fact statement upon their arrival at home. (See Plaintiff's Dep. at 19-20.) Moreover, Fred Heck was nowhere in the vicinity at the time; rather, his account is based solely upon Plaintiff's alleged remark to him when he arrived on the scene after the incident had occurred. Under these circumstances, the various accounts in the record about what Plaintiff's son might or might not have been doing at the time of the incident at issue here derive from *his* out-of-court statements alone, and thus are inadmissible hearsay that may not be considered in resolving Defendant's summary judgment motion. See U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997).[2] As Plaintiff aptly observes in her response to Defendant's

---

[2] Notably, Plaintiff's alleged statement to Fred Heck regarding her son's actions *would* be admissible as non-hearsay, so long as it was offered *against* her. See Fed. R. Evid. 801(d)(2)(A). This admissibility would not be defeated, moreover, by her professed lack of personal knowledge regarding the substance of her alleged statement — namely, that her son was playing with the basketball unit when it fell. See, e.g., United States v. McLernon, 746 F.2d 1098, 1106 (6th Cir. 1984); Brookover v. Mary Hitchcock Memorial Hospital, 893 F.2d 411, 416-18 (1st Cir. 1990); Mahlandt v. Wild Canid Surivival & Research Center, Inc., 588 F.2d 626, 630-31 (8th Cir. 1978). Nonetheless, for present purposes, the Court must view the record in a light most favorable to Plaintiff. As between readings of the record that would reflect (i) that Plaintiff's son was playing with the basketball unit when it fell, or (ii) that it cannot be said what he was doing at the time, the latter seemingly is more favorable to Plaintiff.

8

motion, "whatever [Plaintiff's son] Nathan did just before the incident is really unknown."  (Plaintiff's Response Br. at 14.)

That being the case, the Court cannot see how a reasonable trier of fact could permissibly conclude under this record that Defendant created an unsafe condition at its store by failing to properly secure the basketball unit that fell on Plaintiff.  Simply stated, it is a matter of pure conjecture to say *what* might have caused this unit to topple over.  Perhaps it fell merely as a result of Plaintiff's son having touched it.  Perhaps it fell as a result of Plaintiff's son having climbed on the unit and hung from its rim.  Perhaps it fell as a result of some other intervening event, such as another customer having caused it to tip over.  The unit may have fallen due to its poor design, causing it to topple over even if secured in accordance with the manufacturer's instructions.  Or, it could have fallen because Defendant's employees neglected to put the proper amount of sand or water into the unit's base, or otherwise failed to reasonably secure it against tipping over upon a customer's foreseeable contact with it.

While each of these scenarios (and more) is consistent with the limited record before the Court, not all of them would permit the conclusion that Defendant created an unsafe condition on its premises.  Yet, Plaintiff has not pointed to any cognizable evidence that would make any possible version of events more likely than another.  The courts have uniformly held that such bare speculation does not raise a genuine issue of material fact that could defeat a motion for summary judgment.  See, e.g., Puzzouli v. Target Corp., __ F. Supp.2d __, 2006 WL 2910443, at *4 (E.D. Mich. Oct. 10, 2006);

9

Guthre v. Lowe's Home Centers, Inc., 2005 WL 2372807, at *4 (E.D. Mich. Sept. 26, 2005); Wellman v. Wal-Mart Stores, Inc., 192 F. Supp.2d 767, 773 (W.D. Mich. 2002); Whitmore v. Sears, Roebuck & Co., 89 Mich. App. 3, 279 N.W.2d 318, 321 (1979).  As stated by the Michigan Supreme Court on the closely-related topic of "factual causation" in negligence cases, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Skinner v. Square D. Co., 445 Mich. 153, 516 N.W.2d 475, 480-81 (1994) (internal quotation marks and citations omitted).

  Contrary to Plaintiff's assertions, none of the evidence she cites in her response to Defendant's motion overcomes the impermissibly conjectural nature of her theory of liability in this case.  Plaintiff points first to Fred Heck's acknowledgment at his deposition that Defendant was responsible for placing the basketball unit in the customer area of its Roseville store, and for filling its base with a sufficient amount of sand or water to keep it secure and prevent it from tipping over.  Plaintiff further cites Heck's testimony that the basketball unit was already present on the floor when he began working at the Roseville store two years prior to Plaintiff's injury, and that, since he arrived at this store, he did not put water in the unit's base to secure it, did not instruct anyone else to do so, and did not check how much water actually was in the base.  From this evidence, Plaintiff seeks to draw the negative inference that the basketball unit's base must not have been properly filled with water or sand, because the unit otherwise could

10

not have been "moved or tipped over by a seven-year old child." (Plaintiff's Response Br. at 12.)

As an initial matter, the Court observes that this evidence is just as supportive, if not more so, of a far different inference. Given Heck's evident inattention to the basketball unit over a two-year period, the same modest force that Plaintiff's son allegedly applied to tip it over presumably would have sufficed to topple the unit at *any time* during this period. Yet, so far as the record discloses, the unit had not previously tipped over during Heck's time at the Roseville store — or at any other time, for that matter. This seemingly suggests that some intervening event likely contributed to the fall of the unit on the particular occasion at issue here, because Heck's purported neglect alone evidently was not enough to cause the unit to fall at any earlier point in his two-year tenure.

In any event, the inference that Plaintiff proposes to draw rests upon a number of premises that lack support in the evidentiary record. First, Plaintiff seemingly assumes that *some* action by her son caused the basketball unit to tip over, and she seeks to draw the conclusion that a seven-year-old should not be able to achieve this result. As explained, this is a matter of pure speculation, where the record fails to indicate what, if anything, Plaintiff's son might have been doing at the time that the unit fell, nor whether any such action had anything to do with the unit toppling over.³ Similarly, the record

---

³Moreover, to the extent that Plaintiff invites the Court to conclude that a properly secured portable basketball unit should be incapable of being toppled over by *any* action taken

does not indicate whether the unit tipped over as a result of an inadequately filled base, as opposed to some other cause such as a product defect or the intervening act of a third party. Under these circumstances, a reasonable trier of fact could not permissibly conclude that the basketball unit's base was improperly secured at the time it fell on Plaintiff.

In an effort to overcome this latter evidentiary deficiency, Plaintiff cites (i) Fred Heck's testimony that he was able to move the basketball unit aside after the incident, thereby suggesting, in Plaintiff's view, that the unit did not contain a sufficient amount of water, and (ii) the purported statement of Plaintiff's son just before the unit fell that there was "nothing in it," which Plaintiff later learned was a reference to the unit's base, (see Plaintiff's Dep. at 11, 16-17).[4] But even if the record would permit the conclusion that the unit's base lacked a sufficient amount of sand or water to keep it from tipping over as a result of a customer's foreseeable contact with it — and, again, there is no evidence that this actually was the cause of the unit falling in this case — Plaintiff still would have to produce evidence that Defendant either created this dangerous condition or had actual or constructive notice of it. Once again, Plaintiff cites no such evidence, but merely points to *Defendant's* failure to establish, either by inspecting the unit prior to the incident or

---

by a seven-year-old child, she has not identified any basis, whether in the record or in the case law, for the Court to hold Defendant to such a heightened duty of care in this case.

[4]Again, this statement by Plaintiff's son is hearsay. Even assuming that this statement falls within some hearsay exception, perhaps as a present sense impression, see Fed. R. Evid. 803(1), the statement itself is inconclusive, and hence probably not admissible, see Fed. R. Evid. 401, 402, and Plaintiff's son's subsequent explanation of what he meant is inadmissible hearsay.

investigating its condition afterward, that the base was, in fact, filled with a sufficient amount of water or sand. It is not Defendant's burden, however, to disprove the existence of a dangerous condition on its premises. See Puzzouli, __ F. Supp.2d at __, 2006 WL 2910443, at *4.

At bottom, Plaintiff's effort to identify an unsafe condition on Defendant's premises rests upon the proposition that the basketball unit would not have fallen absent some sort of negligence on the part of Defendant or its employees. The Michigan courts, however, have not expressly adopted the doctrine of *res ipsa loquitur,* but have at most applied a fairly lenient standard for inferring a defendant's negligence from circumstantial evidence. See Gadde v. Michigan Consolidated Gas Co., 377 Mich. 117, 139 N.W.2d 722, 725-26 (1966); McLennan v. Home Depot U.S.A., Inc., 10 F. Supp.2d 837, 839 (E.D. Mich. 1998). Even under this somewhat relaxed standard, the circumstantial evidence must be sufficient to "take the case out of the realm of conjecture and within the field of legitimate inferences from established facts." Gadde, 139 N.W.2d at 724 (internal quotation marks and citation omitted). As explained above, the evidence in this case fails to take Plaintiff's claim of negligence "out of the realm of conjecture," where the record sheds no light whatsoever on the cause of the basketball unit falling on Plaintiff. Under these circumstances, it is impossible to attribute Plaintiff's injuries to an unsafe condition caused by Defendant, where it cannot even be said *what* this condition might have been in the first place.

This leaves only Defendant's contention that it lacked either actual or constructive

notice of the unsafe condition that caused Plaintiff's injuries.  As noted, Plaintiff has not addressed the issue of notice in her response to Defendant's motion, but instead cites the principle that notice is inferred in cases where the defendant itself created the unsafe condition.  See Berryman v. K Mart Corp., 193 Mich. App. 88, 483 N.W.2d 642, 646 (1992).  This principle is inapplicable here, however, in light of the absence of evidence that Defendant created an unsafe condition on its premises.  In any event, given that Plaintiff offers only speculation as to the dangerous condition that led to her injuries, it readily follows that there is no evidence of Defendant's actual or constructive notice of a condition that remains unknown even to this day, despite a full opportunity for Plaintiff to conduct discovery and investigate the possible causes of her injuries.

### IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

s/Gerald E. Rosen<br>
Gerald E. Rosen<br>
United States District Judge

Dated:  October 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 30, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry<br>
Case Manager